·In the Matter of the Application of THOMAS FREDERICK LEE and EMMA KENYON LEE for a Writ of Habeas Corpus to Bring up the Body of WILLIAM CROSSMAN LEE, an Infant.

DE WITT H. LYON, Appellant; THOMAS FREDERICK LEE and EMMA ·KENYON LEE, Respondents.

Second Department, December 8, 1916.

Parent and child — habeas corpus — effect of order denying father's application for writ to secure custody of infant son — right of general guardian to custody of ward.

An order of the Supreme Court, dismissing an application by a father for a writ of habeas corpus to obtain the possession of his infant son who was in the custody of guardians appointed by his mother's will, who had subsequently received letters of guardianship from the surrogate, issued *ex parte*, without the notice required by the Code of Civil Procedure, did not fix the status of the infant and determine that its present and future custody should remain in the hands of such guardians.

Said order dismissing the father's writ did not deprive the surrogate, upon proper application and upon due notice under the Code of Civil Procedure, of the statutory power·to appoint another general guardian.

No appeal having been taken from the subsequent action of the surrogate in appointing another general guardian, after revoking the prior letters of guardianship, and said appointment having been made after-hearing all the parties, it was especially binding upon the first guardians.

If it be claimed that the general guardian subsequently appointed had no right to take the infant forcibly from the first guardians, such issue should not be determined without hearing testimony.

A general guardian, as to his ward's person, stands *in loco parentis.* He has the right of custody by reason of his appointment and official status.

MILLS and RICH, JJ., dissented.

APPEAL by De Witt H. Lyon, who is the general guardian of the person and estate of William Crossman Lee, from an order of the Supreme Court, made at the Rockland Special Term and entered in the office of the clerk of the county of Westchester on the 7th day of August, 1916, directing him to deliver his ward into the custody of the petitioners Thomas Frederick Lee and Emma Kenyon Lee.

In 1911 the decree divorcing Mrs. Georgia Crossman Mills from her husband, William Mills, Jr., gave her custody of

the infant son, then known as William Mills, 3d. Mr. Mills remarried, and later, in 1913, Mrs. Mills married Thomas Frederick Lee, one of the relators, with whom the infant resided until his mother's death in May, 1915. Before this, by a proceeding in the Westchester County Court, the infant's name was changed to William Crossman Lee. By his mother's will, her husband, Thomas F. Lee, and Emma Kenyon Lee were appointed guardians; and on May 18, 1915, they received from the surrogate letters of guardianship, issued, however, *ex parte*, without notice either to the father or to the paternal grandparents, as was required under the Code of Civil Procedure, section 2647. On the next day, May nineteenth, William Mills, Jr., the father, sued out in the Supreme Court a writ of habeas corpus to obtain custody of the infant. On September 15, 1915, this application was denied. The Special Term order decreed that the "application of the said William Mills, Jr., for the custody of said William Crossman Lee, sometime known as William Mills, 3rd, be and the same is hereby denied, together with costs and disbursements to be taxed by the Clerk of the County of Westchester against the said William Mills, Jr., and in favor of the said Thomas Frederick Lee and Emma Kenyon Lee."

Mr. Mills had moved in the Surrogate's Court to set aside this *ex parte* order of May eighteenth, and the issue of letters of guardianship, because of this want of notice to him and the grandparents. Upon this the surrogate, on November twenty-first, directed that the matter be reopened and that notice be given as the Code required. Citation was served upon the father and the grandparents. After several hearings, in which the father appeared and litigated with the Lees the question of the boy's custody, the surrogate decided to appoint a third party as guardian of the infant's person and property. Accordingly, he revoked the prior letters of guardianship to the Lees and appointed De Witt H. Lyon, of Portchester, N. Y., such guardian. The surrogate suggested "that if Mrs. Lee can provide a suitable home for the boy that she have the care of him until he reaches a more mature age when he may decide for himself with whom he wishes to live." The order was entered June twentieth and Mr. Lyon duly qualified as guardian.

The guardian having demanded the person of his ward, some friction appears to have occurred. On July sixth the relators Lee took the infant in an auto to Danbury, Conn. After legal proceedings resulting in the infant being brought back, on July fourteenth, Mr. Lyon took the infant from the Lees and caused a physician to examine the boy, who found him suffering from malnutrition from lack of sufficient food, fresh air and proper exercise for a boy of his age.

A governess, approved by the physician, was selected. The infant, however, was sent, with other boys of his own age, to a summer camp as a boy scout. The Lees thereupon sent to the guardian some additional clothing for the infant.

The Lees sued out a writ of habeas corpus, issued by a justice of the Supreme Court, returnable on July twenty-second. The return set forth the proceedings by which the general guardian had been appointed and had qualified, and, as such guardian, had taken the person of his ward into his custody, together with the physician's examination of the infant's physical condition. On this hearing the objection was made that Mr. Lyon, as the duly appointed guardian, and not the petitioners Lee, was legally entitled to such custody. The learned justice at Special Term apparently took no testimony. He overruled this objection and directed the respondent to return the infant to the custody of Emma Kenyon Lee on August twenty-fifth at noon, which order was entered on August 7, 1916. In his opinion the learned justice referred to his own prior determination upon the writ of habeas corpus sued out by the father in 1915 that the father was not a proper person to have such custody. "At the time the boy was forcibly taken from the custody of Emma Kenyon Lee by the general guardian recently appointed by the surrogate, he was in her custody by virtue of the decision and order of this court, and the general guardian had no right, without process of law, and by use of force, to remove the boy from the custody into which he had been placed by this court. If, in the opinion of the general guardian, Mrs. Emma Kenyon Lee was not the proper person to have the custody and care of the boy, or if for any reason it were desirable that a change be made, application should have been made to this court by writ of habeas corpus,

# 144 MATTER OF LEE.

or on motion for a modification of the order of September, 1915."

On the guardian's appeal here, a stay has been granted.

*Michael J. Tierney* [*Thomas Holden, Jr.,* and *Sydney A. Syme* with him on the brief], for the appellant.

*Clinton T. Taylor* [*Arthur I. Strang* with him on the brief], for the respondents.

PUTNAM, J.:

In the dispatch of the mass of business at Special Term the learned justice must have misapprehended his prior order, both in its terms and in its legal effect. It had denied the father's right by a dismissal of his writ, with costs. But it did not fix the status of the infant and determine that his present and future custody should remain in the hands of Emma Kenyon Lee. (*People ex rel. Keator* v. *Moss,* 6 App. Div. 414, 418.) The learned justice ruled as matter of law that the general guardianship regularly conferred upon Mr. Lyon would not entitle him to his ward's custody without application to modify the justice's prior order. Such order dismissing the father's writ could not deprive the surrogate, upon proper application and upon due notice under the Code, of a statutory power to appoint a general guardian with which Surrogates' Courts have been vested in this State since 1802. (See Laws of 1802, chap. 110; R. L. of 1813, chap. 79 [1 R. L. 454], § 30; 2 R. S. 151, § 6, as amd. by Laws of 1870, chap. 341, and Laws of 1871, chap. 708; Code Civ. Proc. § 2821 *et seq.;* now Code Civ. Proc. § 2643 *et seq.,* as amd. by Laws of 1914, chap. 443; Gen. Rules Pr., rules 52-54; *Matter of Wagner,* 75 Misc. Rep. 419, 425 *et seq.*)

No appeal was taken from the surrogate's action in appointing Mr. Lyon as general guardian. Being made after hearing all parties, it especially bound these relators, who had themselves invoked this jurisdiction. If it be said that the general guardian should not have forcibly taken the child, when he had been returned within the State after his removal to Connecticut, then, as that forcible taking was denied, that issue should not be determined against the guardian without hearing testimony. The general guardian, as to his ward's person, stands

in *loco parentis* (12 R. C. L. 1120.) He has the right of custody by virtue of his appointment and official status. This essential right of such a general guardian could not properly be ignored, on return to this writ.

Upon the ground of error as to the scope and effect of the former order of September 15, 1915, and in overruling the objection raised on this return, that the general guardian appointed June 20, 1916, was entitled to his ward's legal custody, the order appealed from should be reversed, with ten dollars costs and disbursements, and the writ dismissed, with costs.

JENKS, P. J., and CARR, J., concurred; MILLS, J., voted to affirm on the ground that the equities are strongly with the respondent, Mrs. Lee, and that the attempt to take the boy away from her, practically by force, was reprehensible and unwarranted, and of itself justified the order appealed from here; RICH, J., dissented.

Order reversed, with ten dollars costs and disbursements, and writ of habeas corpus dismissed, with costs.